Lyon *et al.* v. Boilvin.

LYMAN R. LYON *et al.*, plaintiffs in error, *v.* WILLIAM C. BOIL-
VIN, defendant in error.

*Error to La Salle.*

Where a record of a Circuit Court was amended so as to show that a party ap-
peared by attorney, instead of the recital of service of process, it was *held* that
it was evidently a clerical mistake, and that the Court had the power and
right to order the amendment so as to make the record conform to the files
of the Court.

Where a judgment was obtained against a party represented by one not author-
ized to appear, it was *held* that the Court had the power to vacate the judg-
ment on motion, without compelling the party to resort to chancery for re-
lief, or to a suit against the attorney; that the judgment could be wholly, or
in part, set aside, and upon terms.

It cannot be shown by the Roll of Attorneys that a person is not an attorney at
law, unless the Roll is incorporated into the record by a bill of exceptions.

In an action of *assumpsit* upon a bill of exchange, the general issue was pleaded,
with a notice of special matter of defence, to wit: that the bill was an
accommodation bill, drawn on and accepted by the defendants, merely for the
purpose of enabling the drawer to get the same discounted to pay the de-
fendants a debt he owed them; that the drawer was to meet the bill at matu-
rity, but that he perverted it to a different use; and that the plaintiff did not
receive the same for value in the ordinary course of business, but merely for
collection on the drawer's account. At the November term 1844, the defend-
ants made affidavit that they expected to prove these facts by Daniel F.
Webster, the drawee of the bill, who resided in Washington City, but who
had sailed to China, as Secretary of Legation to the American Embassy.
Leave had previously been given to the defendants to plead by the first of
March. A further affidavit was made by their attorney, stating that a *dedi-
mus* had been sued out on the 4th day of March, 1844, and forwarded to the
American Minister to take said Webster's deposition; but that it had not
been returned for want of time, and that his evidence was material; and
moved for a continuance, but the motion was refused by the Court, who
proceeded with the case to trial and judgment: *Held,* that the evidence was
material, that due diligence had been used, and that Webster was a compe-
tent witness to prove the facts stated in the affidavit.

ASSUMPSIT in the La Salle Circuit Court, brought by
the defendant in error against the plaintiffs in error. The
cause was finally heard at the November term 1844, before
the Hon. John D. Caton, without the intervention of a jury,
when a judgment for the plaintiff was rendered, and entered
of record as follows:

"The Court, after hearing the evidence in the cause, and

being fully advised of the premises, it is ordered and adjudged, that the judgment of the Circuit Court of La Salle county, rendered at the May term, A. D. 1842, to wit, May 10th, 1842, for the sum of $2413·33 be in all things affirmed, now as of said 10th day of May, A. D. 1842; it is therefore considered and adjudged by the Court, that the said plaintiff have, and recover of said defendants the said sum of $2413·33, for his damages, as assessed of the 10th day of May, 1843; together with the costs and charges in this suit in this behalf expended, and that he have execution thereon."

*J. Butterfield,* for the plaintiffs in error.

I. No process was served upon the defendants below, and the only authority for the rendition of the judgment against them at the May term 1842, was an appearance by Champlin, as attorney for the defendants in this suit, and by Spring and Goodrich as attorneys for the defendants at the suit of N. Boilvin. On the motion made by the defendants to set aside this judgment at the November term 1843, it fully appeared by the affidavits of each of the said attorneys that they were never authorized by either of the defendants to enter an appearance in this cause; they acted solely on information given them by the plaintiff's attorney. The exceptions taken to the decision of that motion bring up with the record those affidavits, and the defendants below now assign for error that the attorneys who entered an appearance for them had no authority to do so.

There are conflicting decisions in the several States, in relation to the validity of a judgment entered on the appearance or confession of an attorney, without authority. In New York, the Court refuses to set aside such a judgment, but lets it stand as security for the amount the plaintiff may recover on trial, and the defendant is let in to plead and defend the action. *Denton* v. *Noyes,* 6 Johns. 301; *Grazebrook* v. *McCreedie,* 9 Wend. 437. But in this State and in Ohio, the Courts have established the more reasonable rule that a defendant shall not suffer or be affected by the acts of an unauthorized attorney, and in such cases will reverse

or set aside the judgment. *Bank* v. *Sloo,* 1 Scam. 428; *Critch-field* v. *Porter*, 1 Ohio Cond. R. 656.

The Circuit Court erred in not following the decision of this Court, and also in permitting the amendment to the record of the entry of the judgment, "that the defendant's appearance herein had been entered at a former term of this Court;" when it was fully proved to the Court that that appearance was entered without authority.   The Circuit Court decided that the said judgment, thus rendered, should stand, and the defendants be let in to plead and defend.

The defendant's pleading to the action did not release the errors of the previous judgment.   As that judgment was not opened, no subsequent pleading to the action would affect it.

II.   There were no laches on the part of the defendants in the sueing out of the commission to take the deposition of Webster.   The defendants had until the first of March, 1844, to plead; they did plead in time and sued out their commission within five days after the time given them to plead; although in this State a party has a right to sue out a commission before the cause is at issue, yet he cannot be deemed guilty of laches in omitting so to do.   Until issue is made up a party cannot know what facts are to be tried, or what evidence will be required.   According to the English and New York practice, a commission will not be allowed until the cause is at issue.   *Allen* v. *Hendree,* 6 Cowen, 400; Graham's Pr. 592, 594.   And the Court will stay the trial of a cause until the return of a commission, although not issued until four special terms after issue joined.   *Beall* v. *Dey*, 7 Wend. 513.

III.   Webster was a competent and material witness for the defendants.

There is a great conflict of decision in the several States on the question of the competency of a witness in an action on a bill or note, to which the witness is a party.   The cases are all collected in 1 Greenleaf's Evidence, 430–1.   The question does not appear to have been decided by this Court.

The rule of exclusion in such cases was first applied in the case of *Walton* v. *Shelley*, 1 Term R. 296.   In that case the Court held that the indorser of a promissory note, upon general grounds of public policy, was not a competent

witness to prove it void in its inception, but that case was overruled by the case of *Jordain* v. *Lashbrook*, 7 Term R. 599.

The rule that an indorser of a negotiable security, negotiated before it was due, is not admissible as a witness to prove it originally void, has been sustained by the Supreme Court of the United States; but on a question of local or commercial law, the decisions of the Supreme Court of the United States are not binding upon the State Courts. *Stalker* v. *McDonald*, 6 Hill's (N. Y.) R. 95.

In New York the party to a negotiable paper is admissible as a witness. In Massachusetts the rule is otherwise. This case does not necessarily involve a decision of that question, as the testimony of Webster was not wanted for the purpose of proving the draft void in its inception, but to prove that the draft was made, accepted and indorsed for the accommodation of the drawer. And secondly, that it was afterwards placed by the drawer in the hands of the plaintiff to collect for, and on account of the drawer.

It is sufficient that Webster was certainly a competent witness to prove facts that took place after he indorsed the draft. 3 Mass. 27; 7 do. 470; 1 Metc. 416. Again, the Court will not try or decide upon the competency of a witness on an application to continue a cause. 1 Duer's Pr. 464; 11 Johns. 200; Graham's Pr. 594; *McKenzie* v. *Hudson*, 16 Eng. Com. Law R. 26; *Ogden* v. *Payne*, 5 Cowen, 16; 2 Tidd's Pr. 772.

IV.   The Court erred in refusing to continue the cause at the November term 1844. The affidavit of Howard, which was read on the motion to continue, proved that Webster was a material witness; and the affidavit of Peters, showed that sufficient time had not elapsed for the execution and return of the commission; no counter affidavits were made on the part of the plaintiff. These affidavits are contained in the record, and are sufficiently referred to in the bill of exceptions.

*J. B. Thomas*, and *H. O. Merriman*, for the defendant in error.

Lyon *et al. v.* Boilvin.

The defendants below, by their subsequent appearance, waived all preceding errors.

The authority of Champlin to practise cannot be questioned in this Court. That was a matter to be decided by the Circuit Court. His appearance in the cause was good. If the party has been injured, his remedy is against the attorney. 1 Salk. 86, 88; *Jackson* v. *Stewart,* 6 Johns. 34; *Gaillard* v. *Smart,* 6 Cowen, 387; *Meacham* v. *Dudley,* 6 Wend. 514; *Grazebrook* v. *McCreedie,* 9 do. 437.

It seems that Courts have, on equitable principles, and in the exercise of discretionary power, opened judgments obtained by default, negligence, or unauthorized appearance of attorneys, upon the ground that the attorneys were irresponsible, but it is a matter of discretion which cannot be assigned for error when that discretion is exercised, and the statute of 1837 has not embraced cases of this kind. *Garner* v. *Aydollett,* 1 Scam. 143; *Schlencker* v. *Risley.* 4 do. 486.

As to affidavits for a continuance, see Gale's Stat. 531. By the terms of this statute, the Court was justified in refusing a continuance. When the same affidavit has been previously made and the cause a long time pending, the Court ought to overrule the motion. 3 Littell, 450; 1 U. S. Dig. 571, 313.

Webster was an incompetent witness. A party to a negotiable instrument shall not be permitted to defeat it by his own testimony, or to testify that it was inoperative in the hands of a *bona fide* holder, or that an instrument put in circulation by his own act is improperly in circulation. *Walton* v. *Shelley,* 1 T. R. 396: *Bank* v. *Dunn,* 6 Peters, 51, 57; *Same* v. *Jones,* 8 do. 12; *Churchill* v. *Suter,* 4 Mass. 156; *Warren* v. *Merry,* 3 do. 27; *Packard* v. *Richardson,* 17 do. 126; *Thayer* v. *Crossman,* 1 Metc. 416; *Houghton* v. *Page,* 1 New Hamp. 60; 1 Greenl. Ev. 428-31.

The New York Courts have held a different doctrine, but prior to the decisions by the Supreme Court of the United States.

This Court will render such a judgment as the Court below should have done.　2 Tidd's Pr. 1238.

The Opinion of the Court was delivered by

Scates, J.*　H. L. Kinney drew a bill upon Lyon & Howard, who accepted the same.　Webster, the payee, indorsed it to Boilvin, who sued the acceptors.　After four summonses were returned "not found," the record shows that the defendants came, by Champlin their attorney, and entered their appearance, and on their motion the cause was continued until the May term 1842.　At that term, after reciting that " it appearing to the Court that process of summons had been served," the defendants were called, a default entered, and judgment for debt and interest.　At the November term 1843, the defendants, by Butterfield their attorney, moved to set aside and vacate the judgment.　On cross motion of plaintiff below, the Court ordered that the entry of judgment be amended so as to recite that defendants entered their appearance by their attorney, instead of the recital of service of process.

On defendants' motion, it was ordered that they have until the first day of March then next to plead issuably, and that all further proceedings on the judgment be stayed, and which should stand as security for the plaintiff, and cost to abide the event.

These several decisions were excepted to, and are assigned for error.

It appears from the affidavits read in the Court below, that Champlin was not the attorney of defendants, and had no authority from them to appear in the case for them in any manner.

To the first point; the Court unquestionably had the power, and did right in correcting clerical mistakes, as it was doubtless one, in reciting service of process, against the officer's return.　In amending, it was proper to make the entry recite truly what already appeared on the files, to wit, an appear-

* Purple, J., having been of counsel in this cause, took no part in its decision.

ance by attorney, and so make it good, in affirmance of the judgment. Rev. Stat. 48, ch. 5, §§ 2, 3.

As to the second point; how far may a Circuit Court give relief under such circumstances? Shall the party be driven into chancery to vacate or enjoin the judgment, and to a suit at law against the attorney, simply to preserve a fiction that records import absolute verity, and cannot be contradicted? The first is too dilatory and expensive to comport with justice; and the Courts in Ohio have refused the relief there, upon the ground, that the party had his remedy at law by motion to the Court rendering the judgment. *Critchfield* v. *Porter*, 1 Ohio Cond. R. 656. The other is too difficult of proof, and doubtful of satisfaction in cases of insolvency.

But, while we afford a summary relief by asserting a power in the Circuit Court to vacate the judgment, we should not, on the other hand, go to the opposite extreme, and deprive an innocent of all the fruits of his diligence, as might be the case in allowing other junior judgment creditors to acquire prior liens, if the judgment was unconditionally set aside; possibly purchasers under it might, also, be involved. If the defendants are let in to make a defence, and can show a meritorious one, in bar of a recovery, the former judgment will go for nought. But when they come to ask a favor, they should not complain, if such terms accompany it as will secure the plaintiff *in statu quo*, so far as he may maintain his claim. We are of opinion, the Court may set aside the judgment wholly, or partially, and upon terms, as was done in this case; and so, according to circumstances, securing to innocent plaintiffs their just advantages, and stripping the faulty of all. The defendants will have every opportunity and advantage of showing their merits, and making their defence, and without injuring the plaintiff; only preserving to him his lien and precedence, should he maintain his demand. The defendants ought to enter their appearance, plead and try the merits. Such was the decision in *Denton* v. *Noyes*, 6 Johns. R. 295, after reviewing the authorities, and we approve the precedent. This Court has decided substantially the same principle, that relief should be given, in the case of *Sloo* v. *The State Bank*, 1 Scam. 428. From

the review of authorities in *Denton* v. *Noyes*, it appears that the Courts in England have decided both ways, according to the particular circumstances. In the case in 1 Salk. 88, the Court refused to set aside the judgment, remarking, that if the attorney be not responsible, or suspicious, they would set it aside. See, also, 1 Salk. 86; Cro. Jac. 695; 1 Strange, 693; 2 Barnad. 232; 1 Binney, 214, 469; 1 Keble, 89.

See *Contra*, 2 Show. 126, 161; Barnes, 239; 1 Term R. 62; Pothier, title "*Con de mandat,*" No. 130.

The objection taken, that Champlin was not an attorney at law for want of enrolment in the Supreme Court, cannot avail any thing, because it does not appear of record in the case, that such was the fact. The party cannot be allowed to treat the Roll of Attorneys in this Court, as a part of his record without incorporating it by his bill of exceptions.

The last error that we deem important to be noticed, is the refusal of the Court to continue the cause at the November term 1844. The issues were *non assumpsit,* and a notice of special matter, the same as set forth in Howard's affidavit, and upon which the cause had been continued at the Spring term. It stated that the bill was an accommodation bill, drawn on, and accepted by defendants, merely for the purpose of enabling Kinney to get the same discounted at the United States Bank at Philadelphia, to pay defendants a debt he owed them, and that Kinney was to meet the bill at maturity. But that he perverted the bill to a different use than that for which it had been drawn; that Boilvin did not receive the same for value in the ordinary course of business, but merely for collection on Kinney's account. He expected to prove these facts by Daniel F. Webster, who resided in Washington City, but who had sailed for China, as Secretary of Legation to Caleb Cushing, our American Minister. The affidavit of defendant's attorney was also read, stating that a *dedimus* had been sued out on the 4th day of March, 1844, and forwarded to Mr. Cushing to take Webster's deposition, but that it had not been returned for want of time, and that this is material evidence, as disclosed in said Howard's affidavit, filed at last term to which he refers for that purpose. The Court refused the motion and tried

the cause. The correctness of the decision depends upon diligence, materiality and competency. The materiality is unquestionable, as he proposes to prove the substance of the notice. The diligence, I think, equally so. They had until the first of March to plead. Before plea and issue it would be difficult to know to what facts to direct the interrogatories; and I think he used diligence in sueing out the commission. How long should the Court continue for the execution and return of a commission from China? The defendants say there has not been time. We must take this, or act upon our general information, derived from sources accessible to all, as to the geographical position of, course of navigation to, and state of intercourse with China, or else require the unpardonable prolixity in the affidavit to set it all forth. I know not how long it would require, neither as a matter of law, nor fact. But in exercising a sound supervisory discretion, and acting upon such information as I possess, I feel warranted in saying that a year is not unreasonable time, if it be even long enough, according to the present course of navigation and intercourse between the two countries. The Court is of opinion there was diligence.

The question of Webster's competency is one of greater difficulty, though not without authority to govern it. While we admit, and approve the general rule as laid down in *Walton* v. *Shelley*, 1 T. R. 296, 1 Greenl. Ev. 430, § 385, and authorities cited in note 2, and sanctioned in 9 Peters, 51, 57, that a party to a negotiable instrument shall not be received as a witness to impeach it, yet Webster, in this case, would fall under an exception to it, for it would not preclude him from testifying to facts and circumstances transpiring after the making the instrument. 6 Ohio, 246. Nor does it seem to me, that it would in a case like this set up in the notice where the plaintiff is alleged to act as a mere collector or agent for the drawer. And in like manner where the assignee took it, with notice of all the circumstances and purposes for which it was drawn. The witness is not called to prove that the bill was void, or illegal, or tainted with any turpitude; but to show that it was designed to use the bill and its proceeds for a particular

purpose, which has been perverted.   To allow the contract to be violated, and an advantage gained by the drawer, by a mere transfer or assignment to an agent to collect for his own use, would be a fraud upon the acceptors.   The indorser may be a competent witness to prove how it was to be used, without impeaching the validity of the bill; it is only attacking the subsequent misuse of it.   Under these peculiar circumstances, it has been held that the Court would not, upon a motion to continue, decide a question of competency, or admissibility of evidence.   1 Dowl. & Ryl. 159; 5 Cowen, 16.   It may be well enough, as a general rule, and it might be frequently dangerous to determine questions so grave and important upon *ex parte* motions, and without debate.   But the question has now been solemnly argued before us, and considered, and so far as facts appear upon this record, we are of opinion that Webster is admissible to prove the facts before us.   We are, therefore, of opinion that the Circuit Court erred in refusing the continuance.   Judgment reversed with costs, and cause remanded with directions to award a *venire de novo*.

*Judgment reversed.*